UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John P. Hoehne, Karl F. Hoehne and Hoehne Bros., a Minnesota General Partnership,

Plaintiffs,

v.

Steven N. Kerns,

Defendant.

00-CV-2544 JMR/FLN

**ORDER**

---

Johnathan S. Parritz, Esq., for Plaintiffs.
Charles Hvass, Esq., for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 1, 2002, on Plaintiffs' Motion to Overrule Defendant's Attorney-Client Privilege Objections [# 133].

Pursuant to an Order by this Court dated April 1, 2002, Defendant have submitted all documents withheld under the attorney-client privilege listed in the privilege log for an in camera review to determine whether the crime-fraud exception to the attorney-client privilege applies.

## I. INTRODUCTION

This dispute arose from a transaction in which Plaintiffs, the Hoehnes ("Plaintiffs"), two farmers from Pine Island, Minnesota, contend that Defendant Steven Kerns ("Defendant") abused their trust and deceived them over a nine year period into investing over $6 million in an elk management operation, approved and financed by the States of Montana, Idaho, Washington and Oregon ("MIWO"). The "deal" entailed reimbursement for expenses of managing elk and acquiring land to use for the building of research facilities. The transactions were backed by signed

FILED 6-5-2
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

agreements and performance bonds in a series of promissory notes. One of the notes purports to convert the previous "cash on demand" payments to a "payable in elk only, over 30 years" agreement. There was also a written agreement that real properties obtained for the MIWO deal would serve as additional collateral for the debts. Specifically, the assets involved in this "collateral agreement" are: 1) a 187-acre farm parcel with house and lot at 5380 North County Road 9, Fort Collins, Colorado; and 2) a house at 350 Turman Drive, Fort Collins, Colorado.

The loan documents in these transactions were prepared by the Hoehnes' friend and financial adviser, Norm Merz, using a "do it yourself" computer software program. This action was filed in November 2000, following the breakdown of the MIWO transactions. On August 3, 2001, this Court ordered Defendant to respond to Plaintiffs' Document request. Property record checks with proper county authorities led Plaintiffs to conclude that Defendant's disclosures were with regard to the property assets researched were incomplete. During deposition, Mr. Kerns testified that he had sought advice from counsel, Mr. Francis, regarding the notes in this case and further discovery revealed warranty deeds in favor of Defendant's wife, Sok Sun Kerns, executed on August 20, 2001, and witnessed by Mr. Francis' secretary, Wanda Kastle. On October 26, 2001, the Honorable James M. Rosenbaum, Chief Judge United States District Court ("Judge Rosenbaum"), issued a Preliminary Injunction precluding Defendant from disposing of four relevant real estate parcels. On January 9, 2002, Judge Rosenbaum modified the Preliminary Injunction to also require Defendant to deposit three checks relevant to this case in a court-controlled account.

The current motion seeks to compel information regarding numerous property transfers, notes and estate planning relevant to the assets at issue and executed by Mr. Kerns in consultation with Mr. Francis. The Defendant asserts that the property transfers, notes, and estate planning at issue are

protected by attorney-client privilege. Plaintiffs claim the production of these documents may be overcome by the crime-fraud exception to the attorney-client privilege.

On April 1, 2002, this Court found that Plaintiffs made a sufficient factual showing that a reasonable person could believe in good faith that an in camera review could reveal evidence establishing that the crime-fraud exception to the attorney-client privilege applies in this case, in accordance with United States v. Zolin, 491 U.S. 554, 572 (1989). As required by In re BankAmerica Corp. Sec. Litig., 270 F.3d 639, 643 (8th Cir. 2001), the Court related the factual showing to a specific cause of action, which in this case, was Plaintiffs' fraud claim. Next, the Court exercised its discretion and decided to review the privileged documents for the sole purpose of determining whether the crime-fraud exception applies.

## II. DISCUSSION

### A. Attorney-Client Privilege

Attorney-client privilege is a "long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 601 (8th Cir. 1977). For the privilege to apply, the parties in question must have a lawyer and client relationship. See id. at 602. The lawyer "must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity." Id. The work product doctrine establishes that "information or materials assembled by or for a person in anticipation of litigation or in preparation for trial may be qualifiedly privileged from disclosure to an opposing party." Id. at 601.

The party asserting the attorney-client privilege or the work product doctrine bears the burden

to provide a factual basis for its assertions. See Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985). Federal Rules of Civil Procedure 26.02(e) states,

> "when a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

This burden is met when the party produces "a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit" from counsel. Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997) (applying the test to both attorney-client privilege and the work product doctrine). Here, the Court finds the that Defendant has not met his burden. The privilege log Defendant provided to Plaintiffs and to the Court were vague, ambiguous, not "Bates" identified and replete with errors. The Rule provides for detailed privilege log, which listed for each document withheld, the type of document, the date of creation, the author, the recipient, the subject matter, and the applicable privilege. Defendant's privilege log is devoid of details other than an ambiguous date and general description and is inadequate for this Court to determine the applicable privilege believed to protect the relevant document. Defendant has produced 84 documents and a two page "privilege log" for in-camera review.[1] The documents consist of 30 invoices/attorney bills, 39 letters and 15 other documents. A careful individual review of each of the documents submitted was conducted.

[1]The unlabeled privilege log contains a list of 74 documents, however the Defendant produced 84 documents which the Court reviewed individually.

The Court has considered the non-privileged evidentiary submissions and the in camera Defendant's privileged documents and privilege log, and the Court finds that many of the documents submitted and listed on the privilege log are not entitled to the protection of the attorney-client privilege. In a legal bill or invoice, "the identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege." Clarke v. American Commerce National Bank, 974 F.2d 127, 129 (Cal. Ct. App. 1992 ). On the other hand, billing statements "which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services performed, such as researching particular areas of the law, fall within the privilege." Id.

The Defendant submitted his bills from Howard and Francis, LLP, for an in camera review under this standard. Upon review, this Court concludes that the bills are not protected by the attorney-client privilege. The bills do little more than show the client's identity, fee amounts, an account number, and the general purpose of the work performed. Therefore, the Court need not decide whether the crime-fraud exception to the attorney-client privilege applies to these documents, because the 30 invoice/bill documents reviewed are simply not privileged to begin with. They must be produced.

## B. Crime-Fraud Exception To Attorney-Client Privilege

Plaintiffs contends that they are entitled to discover certain privileged information relevant to their claims of fraud. The information sought has been classified by Defendant as protected by the attorney-client privilege; however, Plaintiffs contend that these documents fall within the crime-fraud exception to the attorney-client privilege and are thus discoverable.

To make a showing that the crime-fraud exception applies to the attorney-client privilege, the proponent of the exception must satisfy a two-part test:

> First, there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

In re Grand Jury Investigation, 842 F.2d 1223, 1226 (11th Cir. 1987) (citations omitted).

Neither the United States Supreme Court nor the Eighth Circuit has specified the quantum of proof required to establish the prima facie showing. See Zolin, 491 U.S. at 563; In re Gen. Motors Corp., 153 F.3d 714, 716 (8th Cir. 1998) (stating "we leave this question to the district court, recognizing that Zolin dictates a higher standard of proof for public disclosure than for in camera review."). Other courts have adopted various standards. See In re Grand Jury Proceedings, 87 F.3d 377, 381 (9th Cir. 1996) (reasonable cause to believe attorney was used in furtherance of ongoing scheme); Haines v. Liggett Group, Inc., 975 F.2d 81, 95-96 (3d Cir. 1992) ("evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met."); In re Grand Jury Investigation, 842 F.2d at 1226 ("evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed.") (citations omitted); In re Antitrust Litig., 805 F.2d 155, 166 (6th Cir. 1986) (sufficient facts for "a prudent person [to] have a reasonable basis to suspect the perpetration of a crime or fraud.") (quotation omitted); In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1039 (2d Cir. 1984) ("probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof") (citation omitted); In re Int'l

Sys. & Controls Corp. Sec. Litig., 693 F.2d 1235, 1242 (5th Cir. 1982) (evidence which will suffice until contradicted and overcome by other evidence); In re Sealed Case, 676 F.3d 793, 815 (D.C. Cir. 1982) ("evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed" when the document was prepared).

The attorney-client privilege "does not outweigh society's interest in full disclosure when legal advice is sought for the purpose of furthering the client's on-going or future wrongdoing." In re BankAmerica, 270 F.3d at 641. The privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." Zolin, 491 U.S. at 563. Timing is critical. The client must have been "engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme." Pritchard-Keang Nam Corp. v. Jaworski, 751 F.2d 277, 281 (8th Cir. 1984) (citing In re Murphy, 560 F.2d 326, 338 (8th Cir. 1977)).

Moreover, the legal advice must have been obtained to further the fraudulent activity; it is not enough that a communication merely provides evidence of the fraud. See In re BankAmerica, 270 F.3d at 642; Pritchard-Keang Nam Corp., 751 F.2d at 283 ("That the report may help prove that a fraud occurred does not mean that it was used in perpetrating the fraud.")(emphasis in original); In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) ("If it did, the privilege would be virtually worthless because a client could not freely give, or an attorney request, evidence that might support a finding of culpability. Instead, the exception applies only when the court determines that the client communication or attorney work product in question was itself in furtherance of the crime or fraud.") (emphasis in original).

The Court in Zolin contemplated a two-part procedure to establish the applicability of the crime-fraud exception. See 491 U.S. at 564, 570 (requiring the proponent of the exception to make

a "threshold showing" before a court may conduct an in camera review and an "ultimate showing" that the exception applies). The threshold test determines whether a court may exercise its discretion to conduct an in camera review and requires the proponent of the exception to show that a reasonable person could believe in good faith that an in camera review could reveal evidence establishing that the crime-fraud exception applies. See id. at 564, 572. Here, the Court has determined that a reasonable person could believe in good faith that an in camera review could reveal evidence establishing the applicability of the exception.

At this point, in this proceeding, Plaintiffs must make the ultimate showing that the crime-fraud exception actually applies and that the privilege should be overcome. See id. at 564, 568. The Court may consider the content of the privileged documents in this analysis. See id. In order for the crime-fraud exception to apply in this case, Plaintiffs must show: 1) evidence that, if believed by a trier of fact, would establish that fraud was ongoing or planned at the time the documents were created; and 2) that the communications were made in furtherance thereof. Keeping in mind the attorney-client privilege benefits the client, it is the client's intent to further a crime or fraud that must be shown in order to avoid the privilege; both the attorney's intent, and the attorney's knowledge or ignorance of the client's intent, are irrelevant. See In re BankAmerica Corp. Securities Litigation, 270 F.3d 639, 642 C.A.8 (Mo.),2001; Levin v. C.O.M.B. Co., 469 N.W.2d 512, 515 (Minn.App. 1991)("An innocent communication from a lawyer may still fall under the crime-fraud exception if the client is planning a fraud or crime.")

### C. Crime-Fraud Exception Applies Here

Plaintiffs contend that the documents they seek constitute communications made to Defendant's attorney for the purpose of furthering a crime or fraud. In particular, Plaintiffs'

argue that the documents relate to a scheme by the Defendant to secretly dispose of real estate that was covered in the collateral agreement Defendant signed to secure a promissory note he had wit the Plaintiffs.

The Court concludes Plaintiffs have met their burden to make a prima facie showing that the documents they seek were communications made in furtherance of a fraud and were closely related to the fraud.

First, Mr. Kerns signed an installment promissory note for $6,780,525.87 with interest by Mr. Kerns to the Hoehnes dated March 1, 2000. (Third Hoehne Aff., Exh. F). Defendant also signed a collateral agreement to secure the promissory note that expressly pledged a home at 350 Turman Drive, Fort Collins, CO; 160 acres of land in Rathrun, ID; 187 acre farm with house and lot at 5380 N. County Road 9, Fort Collins, CO; 828 acres at Worley, ID; 2000 Freightliner Truck, 26 ft. Fourstar Trailer; and all elk owned by Mr. Kerns in Minnesota as of March 1, 2000, dated March 1, 2000. (Third Hoehne Aff., Exh. G). Plaintiff John Hoehne swears in an affidavit that Mr. Kerns' confessed to him that "this whole thing has been a lie since the beginning." (Third Hoehne Aff., ¶ 15). Mr. Kerns himself testified that at least one of the properties involved in the collateral agreement had already been sold. (Van Tassel Aff., Exh. B, dated January 14, 2002, Deposition of Steve N. Kerns at 342-349). Plaintiffs have also submitted evidence from the Larimer County recorders office showing that some of the collateral property was deeded to Ray-Paul, Inc., and that Ray Paul, Inc. was given development rights to a substantial portion of the pledged property. (Plaintiffs' Exhibit H ("Pls. Exh. H")). Larimer County documents also show, Ray-Paul Inc., executed a deed of trust in favor of the Defendant. Other documents show that other pledged properties were deeded to Mr. Kerns' wife and then back to herself and Mr. Kerns as "tenants by the

entirety". (Pl. Exhs. I & J). These deeds were witnessed by a secretary in the office of Defendant's counsel, Mr. Francis.

The foregoing is sufficient prima facie evidence to establish that communications about these properties were made to Defendant's attorney, Mr. Francis, in furtherance of a fraud to dispose of property that had been previously pledged to the Hoehnes' in the collateral agreement.

The Court has considered the non-privileged evidentiary submissions and the documents submitted in camera. The Court concludes that Plaintiffs have met their burden of establishing the applicability of the crime-fraud exception. With respect to the remaining documents reviewed in-camera, the following documents are found to be communications closely related to the fraud:

| ***Dates of Document*** | ***Description of Doc. & How Relative to Crime-fraud Exception*** |
|---|---|
| November 22, 1996 | Deed of Trust Note with KDR Custom Homes, Inc., relates to communications regarding the transfer and development of property involved in the collateral agreement. |
| November 22, 1996 | Deed of Trust Note with J.D. Evans, relates to communications regarding the transfer and development of property involved in the collateral agreement. |
| February 14, 2000 | Letter to Client Re: Bonner Ferry, related to attempts to transfer property involved in the collateral agreement.<br>Draft Agreement regarding Real Estate and Personal Property addressed to John Finney, P.A., relates to communications regarding the transfer and development of property involved in the collateral agreement. |
| May 25, 2001 | Letter Re: Estate Planning, concerns the transfer of property involved in the collateral agreement. |
| July 30, 2001 | Stmt from Liggett, Smith & Williams, relates to Mr. Francis' involvement in property transfers with Eric Peterson |
| July 17, 2001 | Correspondence with Eric Peterson Re: Estate Planning (including invoices), relates to assessment property values involved in the collateral agreement and transferral of the property. |

| ***Dates of Document*** | ***Description of Doc. & How Relative to Crime-fraud Exception*** |
|---|---|
| August 15, 2001 | Letter to Client Re: Rough Draft of Documents Relating to Sale to Ray-Paul, Inc(with attachments), relates to transfer of properties. |
| September 11, 2001 | Letter to Client Re: Fox Run Estates, relates to communications regarding the transfer and development of property involved in the collateral agreement |
| September 27, 2001 | Stmt from Liggett, Smith & Williams, Notes cooperative work with Eric Peterson for property transfers. |
| October 4, 2001 | Letter to Client Re: Ray-Paul, Inc., relates to communications regarding the transfer and development of property involved in the collateral agreement. |
| No Date | Deed of Trust Note, with Song H. Lee, Kil Ja Lee signature lines, relates to communications regarding the transfer and development of property involved in the collateral agreement. |
| No Date | Deed of Trust Note $235,000, signature line for Terryl Lee Entzi, relates to communications regarding the transfer and development of property involved in the collateral agreement. |
| No Date | Deed of Trust, signature line for Terryl Lee Entzi relates to communications regarding the transfer and development of property involved in the collateral agreement. |
| August 2001 | Deed of Trust, with Ray-Paul, Inc., relates to communications regarding the transfer and development of property involved in the collateral agreement. |

These documents are discoverable and must be produced for inspection and copying by Plaintiffs. Furthermore, the drafts of deeds and actual deeds can not be considered privileged because as a matter of public record they would be disclosed to third parties, and preparation of these documents would knowingly subject the drafter to public review. See Wenner v. Gulf Oil Corp., 264 N.W.2d 374(1978)(Wherever matters communicated to attorney are intended by client to be made public or revealed to third persons, element of confidentiality is wanting, and attorney-client privilege will not protect statement.)

The Court concludes that the memoranda and letters which were submitted in camera and which are not specifically listed above remain protected by the attorney-client /work product privilege, and the crime-fraud exception, does not compel their production because they do not appear to be closely related to the fraud. They do not need to be produced.

The Court expresses no opinion as to whether the Defendant committed the common-law fraud, or Consumer Act Fraud alleged in the complaint. The Court simply finds with respect to the documents at issue in this motion, Plaintiffs have met their burden to establish the applicability of the crime-fraud exception to the specified privileged documents.

## III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant is required to produce privileged documents specified in this Order, as well as all listed invoices/bills. After reviewing the documents in camera, the Court has found that the crime-fraud exception to the attorney-client privilege does apply in this case:

1. Plaintiffs' Motion to Overrule Defendant's Attorney-Client Privilege Objections [# 133] is **GRANTED in part, and DENIED in part** as follows.

   a. Insofar as the Motion seeks all Defendant's invoices/bills, it is **GRANTED**;

   b. Insofar as the Motion seeks all documents referring to estate planning either by draft of promissory notes and deeds, easement agreements, transfer of title, funds or correspondence, invoices and bills to or from Eric Peterson of Liggett, Smith & Williams, P.C., it is **GRANTED**;

   c. Insofar as the Motion seeks drafts of deeds and actual deeds, it is **GRANTED**;

   d. Insofar as the Motion seeks the letters with dates and description in the above table, it is **GRANTED**; and

e. Insofar as the Motion seeks the memoranda and letters not listed in the table above, it is **DENIED**.

DATED: June 5, 2002.

FRANKLIN L. NOEL
United States Magistrate Judge